■ The People of the State of New York, Respondent, v Royal D. Hamilton, Appellant. [20 NYS3d 676]—

Devine, J. Appeal from a judgment of the County Court of Saratoga County (Scarano, J.), rendered November 8, 2013, upon a verdict convicting defendant of the crime of assault in the second degree.

Defendant was an inmate at the Saratoga County Correctional Facility and, on October 9, 2012, had gathered with others in his housing unit for lunch. The victim, also an inmate, worked as a kitchen aide and was delivering lunch to the unit.

While the victim was doing so, defendant abruptly rose from his seat and punched the victim in the face. Defendant was charged in an indictment with assault in the second degree as a result of the attack and, following a jury trial, was found guilty as charged. County Court sentenced defendant, a second felony offender, to five years in prison to be followed by five years of postrelease supervision. Defendant now appeals.

"To prove that defendant committed the crime of assault in the second degree as charged, the People were required to establish that, while incarcerated after having been charged or convicted of a crime, defendant intentionally caused physical injury to another person" (*People v Hadfield*, 119 AD3d 1224, 1225 [2014], *lv denied* 24 NY3d 1002 [2014]; *see* Penal Law § 120.05 [7]). The People were further obliged, given defendant's invocation of the defense of justification, to show "beyond a reasonable doubt that defendant's actions were unjustified" (*People v Terk*, 24 AD3d 1038, 1039 [2005]; *see* Penal Law §§ 25.00 [1]; 35.15 [1]). Defendant argues that the proof at trial did not establish that he intended to physically injure the victim and, moreover, was inadequate to defeat his claim of self-defense. The latter contention, to the extent that it is styled as a challenge to the legal sufficiency of the evidence, is unpreserved for our review due to defendant's failure to advance it specifically in his trial motion to dismiss (*see People v Carncross*, 14 NY3d 319, 324-325 [2010]; *People v Briggs*, 129 AD3d 1201, 1202 [2015]). In any event, that claim will be assessed within the context of our weight of the evidence review, which necessarily includes an assessment as to whether all elements of the charged crime were proven beyond a reasonable doubt at trial (*see People v Danielson*, 9 NY3d 342, 348-349 [2007]; *People v Briggs*, 129 AD3d at 1202).

An " '[intent to cause injury can be inferred from the circumstances' of an altercation, including the injuries inflicted" (*People v Taylor*, 118 AD3d 1044, 1045 [2014], *lv denied* 23 NY3d 1043 [2014], quoting *People v Newland*, 83 AD3d 1202, 1204 [2011], *lv denied* 17 NY3d 798 [2011]; *see People v Terk*, 24 AD3d at 1039). Defendant and the victim gave differing accounts of their prior interactions, but defendant was admittedly irked by the victim's prior refusal to give him a glass of milk. As for the attack itself, the victim testified, and a video of the incident confirmed, that defendant abruptly stood up and punched the victim in the face. The victim's nose was broken by the initial punch, and he sustained facial lacerations that required multiple sutures to close. Viewing this evidence in the light most favorable to the People (*see People v Ramos*, 19 NY3d

133, 136 [2012]), a rational trier of fact could readily find that defendant intended to injure the victim (*see People v Taylor*, 118 AD3d at 1045; *People v Zindle*, 48 AD3d 971, 973 [2008], *lv denied* 10 NY3d 846 [2008]). The jury did make that finding over the conflicting testimony of defendant and, "[v]iewing the evidence in a neutral light and acknowledging that '[g]reat deference is accorded to the fact-finder's opportunity to view the witnesses, hear the testimony and observe demeanor,' " we conclude that its decision to do so was not against the weight of the evidence (*People v Zindle*, 48 AD3d at 973, quoting *People v Bleakley*, 69 NY2d 490, 495 [1987]; *see People v Hogencamp*, 300 AD2d 734, 735 [2002]).

Use of physical force against a person is justified when a defendant "reasonably believes such to be necessary to defend himself, herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful physical force by such other person" (Penal Law § 35.15 [1]; *see People v McManus*, 67 NY2d 541, 545-546 [1986]). Defendant testified that he felt menaced by the victim because of prior interactions between them, and he acted in self-defense when the victim approached him with what he believed to be ill intent. Those claims flew in the face of testimony from the victim that he did not know defendant aside from the milk incident and from correction officers who were unaware of any tension between the two, as well as the video showing what can only be described as an unprovoked attack by defendant. The jury determined from the above evidence that defendant could not have reasonably believed that force was necessary to confront an imminent use of force by the victim, and that finding was not against the weight of the evidence (*see People v Terk*, 24 AD3d at 1039-1040; *People v Hogencamp*, 300 AD2d at 735). Thus, we have no quarrel with the jury's verdict.

Defendant next contends that County Court erred in failing to dismiss the indictment due to a defect in the grand jury proceedings, namely, that the grand jury also heard evidence against defendant addressing an unrelated criminal transaction. "[T]he mere presentation to a single grand jury of evidence regarding two different alleged criminal transactions—even though the offenses arising therefrom would not be joinable— neither 'fails to conform to the requirements of [CPL article 190]' nor does it, without more, present an impairment of the integrity of the grand jury which may result in prejudice to the defendant" so as to require dismissal (*People v Nash*, 64 AD3d 878, 882 [2009], quoting CPL 210.35 [5]; *see People v Nieves*, 279 AD2d 388, 388 [2001], *lv denied* 96 NY2d 804 [2001]).

County Court determined after inspecting the grand jury minutes—and our review confirms—that there were no "improprieties in the manner in which the two alleged criminal transactions were presented to the grand jury which may have impaired the grand jury's integrity and prejudiced defendant" (*People v Nash*, 64 AD3d at 882; *see People v Huston*, 88 NY2d 400, 409 [1996]).

County Court did err, however, in denying defendant's request to represent himself at trial. "A criminal defendant may be permitted to proceed pro se if the request is timely and unequivocal, there has been a knowing and intelligent waiver of the right to counsel, and defendant has not engaged in conduct that would interfere with a fair and orderly trial" (*People v Ryan*, 82 NY2d 497, 507 [1993] [citation and italics omitted]; *see People v McIntyre*, 36 NY2d 10, 17 [1974]). Defendant here made a timely request before the commencement of trial (*see People v McIntyre*, 36 NY2d at 17), and the record is devoid of anything to suggest that he would act in a manner inconsistent with an orderly trial (*cf. People v Eady*, 301 AD2d 965, 965-966 [2003], *lv denied* 100 NY2d 538 [2003]). County Court then engaged in the requisite inquiry, examining defendant's "education, occupation, previous exposure to legal procedures and other relevant factors bearing on a competent, intelligent, voluntary waiver" (*People v Smith*, 92 NY2d 516, 520 [1998]; *see People v Crampe*, 17 NY3d 469, 481 [2011], *cert denied* 565 US —, 132 S Ct 1746 [2012]). Defendant revealed that he had the equivalent of a high school diploma, was literate, had no history of mental illness and was not on any medication. He further expressed a basic understanding of the concepts involved in a trial, such as the differing roles of the judge and jury and the need to ask questions of witnesses in an appropriate and non-leading manner. He also, however, had no relevant work experience and had never undergone the ordeal of a criminal trial. He admitted that he lacked knowledge of trial procedures and "may not understand" when good "legal reasons" existed for him to remain silent. He further professed a lack of understanding of challenges during jury selection.

No reason exists to doubt that defendant was competent to waive his right to counsel and represent himself; significant reason exists to doubt his knowledge of trial procedures. Allowing a defendant who is unfamiliar with the process to conduct his or her own trial undermines the "powerful ideal that our criminal justice system must determine the truth or falsity of the charges in a manner consistent with fundamental fairness" (*People v McIntyre*, 36 NY2d at 14). Nevertheless, the "right to

self-representation embodies one of the most cherished ideals of our culture; the right of an individual to determine his [or her] own destiny" (*id.*). The Court of Appeals has therefore "recognized that even in cases where the accused is harming himself [or herself] by insisting on conducting his [or her] own defense, respect for individual autonomy requires that he [or she] be allowed to go to jail under his [or her] own banner if he [or she] so desires and if he [or she] makes the choice with eyes open" (*Matter of Kathleen K. [Steven K.]*, 17 NY3d 380, 385 [2011] [internal quotation marks and citation omitted]; *see People v Vivenzio*, 62 NY2d 775, 776 [1984]). If a defendant is not dissuaded from representing himself or herself even after being warned "that his or her lack of knowledge, relative to that of a lawyer, will be detrimental," he or she must be permitted to do so (*People v Sealy*, 102 AD3d 591, 591 [2013], *lv denied* 21 NY3d 1009 [2013] [emphasis omitted]; *see People v Crampe*, 17 NY3d at 483; *People v Smith*, 92 NY2d at 520).

County Court here advised defendant that he "would have to try the whole case" on his own, although he would be able to ask questions of standby counsel, and that the rules would not be relaxed for defendant if he proceeded pro se. Defendant confirmed that he was not bothered by his ignorance of rules associated with the essential parts of a trial, including those for the admission of evidence and the questioning of witnesses. Defendant stated that his sole interest was in telling his story in his own way, and he continued to seek to represent himself even after receiving commitments that he could testify on his own behalf if he was represented. County Court bluntly warned defendant that "if you represent yourself on this, you're going to make a mess of it, and you're more likely to be convicted," and defense counsel lamented that "it's a tragedy watching [defendant] drive the ship into the iceberg here." Defendant acknowledged those risks, but never wavered in his desire to proceed pro se, simply stating that "[i]f I lose, I lose. . . . I don't mind if I lose because of my lack of knowledge." Inasmuch as the foregoing reflects that defendant was made "aware of the dangers and disadvantages of proceeding without counsel" and still desired to proceed pro se, County Court erred in denying his request to do so (*People v Providence*, 2 NY3d 579, 582 [2004] [internal quotation marks and citations omitted]; *see People v Ryan*, 82 NY2d 497, 507-508 [1993]; *cf. People v Middlemiss*, 125 AD3d 1065, 1067 [2015]). The refusal to grant a request under these circumstances is not subject to harmless error analysis (*see People v LaValle*, 3 NY3d 88, 106 [2004]), and, as such, we are constrained to reverse the judgment and remit for a new trial (*see People v Tafari*, 68 AD3d 1540, 1541-1542 [2009]; *People v Williams*, 27 AD3d 770, 771-772 [2006]).

Defendant's remaining arguments, advanced by defense counsel and in a supplemental brief submitted by defendant pro se, are rendered academic in light of the foregoing.

Lahtinen, J.P., McCarthy and Lynch, JJ., concur. Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Saratoga County for a new trial.